The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oh yeah, oh yeah, oh yeah. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the court is now sitting. God save the United States and this Honorable Court. For our first case today, we're going to have case number 28-7382, Deaulandy Coleman v. Sergeant Jones. Thank you, Madam Clerk. Welcome, counsel, to the Fourth Circuit today, this remote situation. And we have Mr. Ballinger with the University of Virginia. He's going to introduce the student counsel. Is that right, Mr. Ballinger? Yes, thank you, Your Honor. May it please the court. I'm the director of the Appellate Litigation Clinic at the University of Virginia School of Law. And it's my pleasure to introduce Mr. Barrett Anderson and Mr. Timothy Shriver, who will be presenting argument for Mr. Coleman. Thank you, Professor Ballinger. It's great to have you all do this good work for us. And Mr. Anderson, it's good to have you with us. You may proceed. Thank you, Your Honor. May it please the court. The district court's grant of summary judgment should be reversed for three reasons. First, the district court recognized that a reasonable jury could infer intentional discrimination on this record. But there can't possibly be qualified immunity for intentional discrimination. Second, forcing Mr. Coleman to choose between his religious beliefs and a diet that contains meat is coercive and a substantial burden on his exercise of religion. Clearly established law demands a penological justification for such coercion. And here there was none. Finally, Mr. Coleman has a tribal case under the establishment clause because the defendants treated Jewish inmates favorably to Muslim inmates. Now, the district court's most straightforward error was granting summary judgment on qualified immunity basis while simultaneously recognizing that this record supports a reasonable inference of intentional discrimination. The Supreme Court in Crawford L. and this court most recently... Don't we view qualified immunity from an objective lens? Your Honor, in Thompson v. Commonwealth of Virginia and Dean v. Jones, this court held that when the constitutional violation turns on the officer's subjective state of mind, like it does for equal protection violations, there cannot possibly be qualified immunity when the officer acts with a culpable... Because there's no place in qualified immunity in this context for an objective viewpoint? We don't look objectively to whether the violation was clearly established? Not under intentional discrimination of equal protection, Your Honor. Because when an officer acts with a culpable state of mind... What case is that again? This comes from the Supreme Court's decision in Crawford L. and also this circuit's decisions in Dean v. Jones and Thompson v. Commonwealth of Virginia. In both of these cases, this court denied qualified immunity because the officers acted with a culpable state of mind. Can I... Counsel? No, sorry. Go ahead. He said culpable. Counsel, does some of this turn... I mean, I understand what you're saying. And the district court did find that the record would support a finding of intentional discrimination. Is that what he said? Yeah, intentional discrimination. But does some of this turn on what we mean by that? The fact that you intentionally treat people differently isn't necessarily unconstitutional, right? We had a case about whether a ban on No question that the officials were intentionally treating men differently than women, but I don't think we would have said it was clearly established that to do so violated the equal protection clause. So does part of this turn on what we mean by intentionally discriminate? Yes, Your Honor. And in this case, the district court in its discussion of equal protection specifically pointed out that Muslims were treated inferior to other religious groups within the prison. It means that it's because he is being treated differently due to his religion. He's being treated inferior to other prisoners. And so this intentional discrimination claim and the finding from the district court specifically precludes qualified immunity, especially on summary judgment at this point. However, even setting aside the intentional discrimination argument, Mr. Coleman has a tribal case that his free exercise rights were violated under his, excuse me, his clearly established free exercise rights were violated because the defendants substantially burdened. The meal he was provided was compliant with his religion, correct? No, Your Honor, because he is consistently maintained and the district court erred in waiving his claim. Well, go ahead, finish your sentence. I was just going to say, because he has to consistently maintain that his religion requires that he eat meat, and this is supported by... Wait, when did he maintain that in front of the prison authorities? This, the thing about the religion requiring meat didn't come about until the lawsuit was filed, did it? Yes, Your Honor, but in his initial complaint, he did point to several chronic verses indicating... So when you said yes, Your Honor, you're agreeing with me that the meat, the requirement that he eat meat, that allegation did not come about until after the lawsuit, correct? Correct, Your Honor. So then I go back to how it was... You're agreeing with that, with Judge Thacker's statement there? The meat issue only came up, or contention only came up, when the lawsuit was filed? I believe so, Your Honor. In his initial complaint, he did point to the same chronic verses that he claims support his belief that he is required to eat meat. However, the explicit... That creates a lot of problems for you, doesn't it, that he didn't bring it up? How'd you get around that? Yes, Your Honor, but they have not argued that he failed to exhaust his present grievance. They've not argued... No, no, this goes to the qualified immunity, and whether they... It even goes to your argument that they intentionally violated some constitutional right of his. I don't understand how they could have intentionally done that when they were providing him a Muslim-compliant meal, based on what their procedures said, and what the facility that provided the meal said, and all he told them was that he was not getting enough to eat. That sounds more like I'm hungry. Yes, Your Honor, but if the defendants want to challenge the sincerity of Mr. Cohen's religious beliefs, and they can... No, I'm not sure, and I'm not... I don't think anybody's questioning the sincerity of his religious beliefs. What I'm trying to understand is where in the record is the indication that the correctional facility intentionally violated any of his constitutional rights, based on his sincerely held religious beliefs? Yes, Your Honor, even if his religious beliefs did not require him to eat meat, there is still the coercion that placed on him when the prison forces him to choose between his religious beliefs and a meat-based diet. This course of pressure... Counsel, sorry, it's Judge Harris. I understand your argument about being forced to choose between a religiously-compliant meal and a meal with meat, but I am not even... I guess I don't understand. It seems to me there's a more fundamental problem here, and this is also something I will ask your colleague. Everybody seems to agree that under clearly established law, your client was entitled to a religiously-compliant meal that was nutritionally adequate. The district court found that there is a significant dispute effect as to whether the meals he was given were nutritionally adequate or not. If they weren't, I don't even understand the defendants to be arguing that that would not violate clearly established law. Why do you need this argument about being coerced to give up meat when the district court said there is a dispute effect as to whether these halal meals were nutritionally adequate or whether they caused him very severe physical problems? I'm not understanding the court's finding on that kind of core question. We agree that that finding on that core question should have precluded summary judgment. This should have gone through the trial. Well, they precluded summary judgment. He ruled that he would have had a right to a trial on the first part of the thing. That is, there was a constitutional violation. He said it wasn't clearly established. And they had qualified immunity. It constitutes a violation, but there's no cross-appeal here. You won on what Judge Schringer ruled as to their failure to give him the right meal. I thought he ruled in your favor. No, Your Honor, Judge Schringer dismissed them. He said they're entitled to qualified immunity. And that's right. No, so we disagree that the defense won the first half of the case. I thought they lost the second half of the case. Yes, Your Honor. We are appealing the second part of the case. We're appealing the grant of qualified immunity or the finding of qualified immunity. The issue on appeal, but Judge Schringer ruled in your favor on the first part of the case. And they didn't cross-appeal. They have not crossed-appealed. Yes, Your Honor, but we do believe that the district court erred when it defined the right as the right to eat meat in prison. And that's not how this analysis necessarily works under the law. You want a broader right. Correct, Your Honor. We believe under Turner and this court's precedence in Thompson, or excuse me, in Lovelace v. Lee and Wall v. Wade, that the clearly established right is the right to a religious accommodation absent a valid penological justification. And here there was no valid penological justification. The defendants have pointed to several very abstract, very speculative penological justifications. However, as the district court found under this record, their vague administrative concerns. He ruled in your favor on that point and they haven't challenged it, right? From that Turner point, Judge Schringer ruled in your favor. They don't challenge that on appeal. We would agree with that, Your Honor. However, the fact that qualified immunity was still granted is problematic in this case because it left Mr. Coleman remedyless. When a officer violates a constitutional right but then receives qualified immunity, they have to come up with a valid and reasonable penological justification, which is absent in this case. In this case, the defendants have pointed to several vague administrative concerns. It's true. However, Judge Schringer found that these were belied by the record. We point this court to specifically several different, one statement from Wall v. Wade where this court said that generalized claims of penological justification are not sufficient in this instance. And so if the defendants are going to claim that they have valid penological justification, they're going to claim that they are not liable for violating Mr. Coleman. Can we go back to Judge Harris's question about not being nutritionally, I'm sorry, Judge Harris. You can phrase it better than I can, but I don't think I got an answer to that question. Did you, Judge Harris? No, I don't. And again, I don't want to tell you how to argue your case. But as I understand it, there is no dispute in this case that there is a clearly established right to a nutritionally adequate, religiously compliant meal. The district court found that there is a dispute of fact as to whether your client was given such a meal. And so I don't understand why you need to be arguing that the clearly established right should be viewed more broadly than the one I just said. You get a right to a religiously compliant meal that will keep you healthy. And the district court said there is a significant dispute of fact as to whether your client ever got such a meal. So I guess I am just, I just am, this is a genuine question. I'm really not trying to tell you how to argue. Am I missing something that makes this case more complicated than it seems to me? And if so, what is it? No, Your Honor, we don't believe you are. We believe that Mr. Coleman has a tribal case that he was suffering significant health consequences. And every court that has ruled on this issue has found that significant health consequences are a substantial burden. And that dispute of fact, we believe should remain. As to his health consequences, what did the prison know at the time about the alleged health after the litigation? I may have to check the record on that, Your Honor. But my understanding is that he, number one, was monitored multiple times during his cell watch and that he visited the infirmary multiple times. And in every one of those visits, he complained about the, well, not in every one, but in several that are unredacted. Several of them, in several of them, he specifically complained about the gastrointestinal issues that he was suffering, his weight loss, and he blamed it on the diet. Now, assuming these facts is true, at this stage of the litigation, Mr. Coleman has a tribal case that he did suffer these health consequences, which would require that this case be remanded for trial. I briefly want to point out that we, in our brief, argued that Mr. Coleman has a tribal case that the defendants treated Jewish inmates more favorably than Muslim inmates. And under Cutler v. Wilkinson, the Supreme Court has demanded neutrality in treatment between religions. And in this case, the defendants have pointed to no discernible secular purpose for treating Muslim inmates inferior to Jewish inmates. The district court recognized in its opinion that the defendant could have just shifted to dual certified meals, which they served in the past in the prison, and this would have fixed the entire problem. However, they've refused to do so. If your honors don't have any other questions, I'd like to reserve the remainder of my time for a moment. Thank you. Let's see. Mr. Croner? Thank you, your honor. You're representing the defendants, are you? Yes, sir. I'm representing Sergeant Jones and Major Johnson. Good to have you with us. Thank you, your honor. If I could begin. And I think Judge King hit a lot of this in the questions he was asking my colleague there. But the single issue before the court is the grant of summary judgment on the basis of qualified immunity. As the court, as Judge King was referencing, prior to that aspect of the ruling, that's the only adverse ruling that plaintiff received on summary judgment. Summary judgment is granted on that single basis. If the court recalls, prior to getting to the district court, many of the issues have become moot regarding injunctive relief, declaratory relief, leaving us only with civil damages against Sergeant Jones and Major Johnson, these government officials. And as the court is aware via the U.S. Supreme Court, when you're looking at civil damages for government officials performing functions, their discretionary functions, you're looking at HARLA. And I think that's why the court asked the questions regarding whether the right was clearly established to a diet with meat that satisfies the law, because that's the language in HARLA. Counsel, sorry, totally. I understand your argument and I appreciate it. You are not disputing, right, that there's a clearly established right to a religiously compliant meal that is nutritionally adequate, right? We are not. Okay. And you don't dispute, I assume, that the district court found that there was a question of fact as to whether or not the plaintiff here received such a meal. No, we're not disputing that that was- Then how can there be summary judgment on qualified immunity? I don't understand it. There's a clearly established right to a nutritionally adequate, religiously compliant meal. The district court found, and you don't contest this anywhere in your brief, that there is a significant factual dispute as to whether or not he received halal meals that were nutritionally adequate. He alleges that he told people, I'm not getting enough calories, that's why I'm sick. How can we grant summary judgment on qualified immunity then? I don't understand. Well, Your Honor, remember we're talking about the objective reasonableness of the at the time that he wasn't getting nutritionally adequate. Why didn't you file a false appeal? He says he did. You didn't file a false appeal. I'm sorry. I said you did not file a false appeal. We did not. We were granted on the basis of qualified immunity and we feel that's the only I'm sorry. So you accept the adverse ruling made by Judge Tringa? If the court recalls from the record in the bids and the contracts that were presented to the court and that are part of the record, each of the meals contains, each of the meals in the bid are required to have the same amount of calories regardless of what they are. So whether it's religious, common fare, bagged meals, the number of calories is supposed to be the same provided by the vendor. And so again, we're looking at the reasonable person in the official's position with knowledge that all these meals are supposed to be the same nutritionally and then they're just I mean, that may be counseled, but the district court did find that there's a significant dispute effect as to whether he had physical health issues that were caused by not letting him have something more than this whole meal. And so, you know, not only did you not appeal that finding, you don't argue about it in your brief. I just I mean, I guess I will just ask the same question. I feel like maybe I'm missing something about this case. Is there a complication here that I am missing? No, Your Honor. The crux of the law as we've gone through the other circuits is not that we can see that there's a requirement that it be nutritionally adequate, but the crux of the law is that vegetarian meals are nutritionally adequate. And so we can talk about that being an issue. And that's what you said in the district court. And the district court said the defendants argue that the vegetarian meals were nutritionally adequate, but the plaintiff asserts that those meals caused him to lose weight, suggesting that they may not have been adequate. Moreover, extreme health effects are not necessary to demonstrate a substantial burden. That's how he finds the dispute effect. He understands that your position is that they were nutritionally adequate, but he thinks on this record, that's a jury question. Well, Your Honor, I think the court finds for the plaintiff on that manner and then grants us summary judgment on qualified immunity on another. And I guess I'm saying that looks like a legal mistake to me, given the finding about the factual question as to whether the meals were nutritionally adequate. I think it may have been in error to grant qualified immunity. Well, the court has to remember, we're talking about two parts here in the analysis of qualified immunity. Part one is whether there's a clearly established. You lost on one and you won on the other. Part two is whether a reasonable law is really established. There has to be a trial, isn't that right? Well, Your Honor, the second part regarding qualified immunity is rights of which a reasonable person would have known. So you have two problems here, a clearly established right and a right that would have been reasonably known. And you have to remember, we're looking at supervisory positions here. These aren't policy makers. You're trying to argue a subjective argument now. No, Your Honor, it's still an objective test. It's still an objective test, but it's a person in the official's position. It's objectively whether this law is clearly established. And if the law is clearly established on the point at issue, then the district court is not going to be able to prove that anything is there. And he's already ruled that there's a dispute of fact that would warrant a trial. Otherwise… Well, Your Honor, I think what we're doing is we are separating out qualified immunity when both are required. So the general rule under Harlow is that the officials are going to be shielded from liability. So that's where you start. The shield starts there when it's civil damages against a government official insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. And we're getting hung up before the word of right there. And if you look at the district court's decision… So all I see that the officers knew as to whether this was nutritionally compliant at the time that he was complaining while he was in jail was that he said he wasn't getting enough to eat. That is what they knew. Is that enough to make it clearly established? Because the health issues and him losing all this weight and saying he lost all this weight and having all these stomach pains occurred in the interrogatories after the lawsuit was filed, right? So is him saying I'm not getting enough to eat, in your view, sufficient for it to be clearly established for the officers at the time such that they should not get qualified immunity? No, Your Honor. And if you recall, and the district court notes this, part of the dispute is that Mr. Coleman had engaged in multiple hunger strikes during this time and during his incarceration there. So the district court notes that in its decision. I'm sorry, in its analysis. And then when the district court actually gets to its decision where it grants us qualified immunity, it actually kind of flips it and goes to that second prong that I'm talking about, saying that the Sergeant Major Johnson and an objective standard could not have known that their actions of giving him the halal meal, as basically instructed, would violate his constitutional rights, even with- Counsel, that's not what the judge said. That's not what the judge said. The judge said the reason they get qualified immunity is that there is no clearly established right to be given meals with meat. That's what he said. He did not say there was a mismatch between what he thought had to be clearly established. I don't want to personalize this. The district court thought that there could be no qualified immunity unless there was a clearly established right to be given meals with meat. And I am suggesting that that looks to me like a legal error. There is a clearly established right to be given nutritionally adequate meals. He had already found there was a jury question on that point. And he did not deny qualified immunity because he thought that the guards were not on notice as to the nutritional problem here. The denial of qualified immunity was because there was no clearly established right to be given meals with meat. It's just a non sequitur. That's what you argue in your brief, Mr. Kreiner. As I recall, I think you have a section that called that. There's no constitutional right to get meals with meat. That is correct, Your Honor. But remember, when you're applying- But you're arguing on appeal. There's no such constitutional right, you said. Well, there isn't. There is no such constitutional right to meat. And that's why we went outside the circuit so much because we searched high and low to find a scenario in which plaintiff was granted the relief plaintiff is requesting, which is a non-vegetarian meal because of his religious election. And we went through the third, second, sixth, fifth, and eighth, and all of them said no. And so we have a similar scenario in each of these circuits. And it causes one to ask, what is different here in our circuit that we would be correct where so many of the other circuits have been wrong? Even in looking in the district courts within our own circuit, they have actually ruled that a meat-free diet available under Islamic law as an alternative does not require an inmate to choose between his religion and that it's nutritionally equivalent. That's the Turner Bay case. And so I understand the court's question regarding the question of fact of whether it's nutritionally equivalent. But I think the case law and the remaining cases that we've cited here sets forth that a vegetarian diet is sufficient, is nutritionally equivalent. And as I stated there in the record, all of the meals are required to have the same amount of calories, regardless of what the meal is. And so the court recognized that there's not a right to meat as a religious election, halal meat in this particular case, within a meal. And we believe that there is no such established right. The question is whether that's the issue. What's that Wade case say? Inmates are entitled, that's Wall v. Wade, opposed by Fourth Circuit, written by Judge Gregory. Inmates are entitled to religious dietary accommodations, absent a legitimate reason to the contrary. That's Fourth Circuit's authority. That's correct, Your Honor. And I don't think plaintiff has presented in the district court has found that he wasn't accommodated. I think Coleman was clearly accommodated based on his religion with a diet that is acceptable under Islamic law, which is what the court is asking. I think in this situation, Mr. Coleman was not getting the type of meal that he wanted, that he felt was acceptable under Islamic law, but he was given this accommodation that he elected. Remember, they're not forcing him to take a halal meal because he's Muslim. This is an election that Mr. Coleman has made. Counsel, I totally understand your argument about the idea that the absence of clearly established law to the effect that if you have a religiously compliant meal that's nutritionally adequate, it would violate the constitution not to provide a different one that had meat. I understand what you're saying about that, but the rule can't be that if you're entitled to a religiously compliant meal that has on the package, it says it's the same number of calories. You happen to be allergic to it, but that's going to have to do. It makes you sick, but that's the one you get. The clearly established right is to a religiously compliant meal that is nutritionally adequate for the person who has to eat it. I think maybe on the merits in front of a jury, there will be a really interesting question as to whether or not, and I have no, I don't mean at all to say anything bearing on the merits question of whether this plaintiff will actually be able to prove his side of this factual dispute, that this meal was inadequate and it didn't cause these health effects. I'm just having trouble working through what appears to me to be a mismatch between the district court's factual findings and then the qualified immunity finding. I think the court is going a step further by applying the law specifically to Mr. Coleman, where when it's been applied on other bases, it's just been on the sufficiency of the diet itself in comparison to what else was being served. I think in this particular case, even if Mr. Coleman is provided, he's talking about the nutritional adequacy, even if he's provided the kosher meal that has the meat in it, it's still the same amount of food. It's the same number of calories that he's receiving in the halal meal. Even if granted the relief as he had requested it, I think he's still receiving the same nutritional value in that case. It does make me wonder on whether or not he continues to proceed with this case if he's given that meat diet, but he's at least receiving the same amount of calories as he is in the halal diet. I think the court is taking a step further than where other courts have taken it in saying, applying it to this particular person that has to eat the meal as the court reported it. No one else has taken it that far at this point that I have found. Right, but you did not appeal, cross appeal that part of the district court's judgment, and you didn't argue any of this in your brief. I don't know really where that takes us. Can I ask you a question about the equal protection part? The district court also finds that it's a jury question because a reasonable jury could find not only that there was differential treatment of Muslim and Jewish inmates, but also that the differential treatment was based on intentional discrimination. That sounds to me like what the question is to whether there was invidious discrimination taking place here, anti-Muslim animus. If that's right, if we thought that the record created or established a jury question as to whether or not there was anti-Muslim animus going on here, invidious discrimination, can there be qualified immunity for that? Isn't it clearly established you're not allowed to treat discrimination? Intentional discrimination doesn't necessarily mean worse, right? It doesn't necessarily mean worse treatment. Right, and I am just trying to figure out through my hypothetical question where you are on this. If the record did give rise to a factual dispute, if a reasonable juror could find that there was anti-Muslim bigotry at work here, would you say that that could be covered by qualified immunity or not? You'd have to say no, wouldn't you? I'm sorry? You'll have to say no to that question. That's correct, yeah, and I appreciate the second to think about it to make sure. I definitely want to say no, but the answer is no to that. If it's whether it's nefarious and intentional to the detriment, so if it's purposeful harm, then I believe the plaintiff alleges that in his brief that you do end up in a situation where we have discrimination, but we'll call it the bad kind of discrimination. My question that I then pose is why is it that the meal with meat is better than the meal without meat when there is getting something worse than receiving a meal that has meat in it? You're asking us questions, but I'll ask you one. The judge ruled that there was a dispute of fact as to whether there was intentional discrimination. Did they not? He did, he did. And you did not challenge that on appeal. He did not. So that's settled for purposes of this appeal that the jury could find that there's a dispute of fact that warrants a jury trial. That's been determined by the judge, but he granted qualified immunity. That's correct, your honor. The legal proposition, the issue I think in the appeal, the only thing we have is, is the qualified immunity award supportable? And it is, your honor. Even with that question, even with the court making the findings that they did, when you go through the qualified immunity analysis under HARLA, the court does not find that discernible right, that clearly established right, and the court doesn't find that Jones and Johnson in their position, and remember it's a reasonable person in their position, would have known their actions violate that clearly established right. And so I think even with the court making the findings that they did, and the court was correct in this, the court can go through and find these issues of disputed fact, but the court is now qualified immunity because we are seeking civil damages against government officials and nothing else. And the qualified immunity analysis has those two parts. This is just such an odd case because, right, as I understand it, before the district court, you didn't even argue against this claim of invidious discrimination, sort of anti-Muslim animus. You didn't even argue it on the merits. You were just like, forget the merits. We're just going to come in on qualified immunity. And I do understand that qualified immunity is obviously a sort of, you know, purposely and appropriately very defendant friendly. So I see why one might do that. But, you know, as I think we all agree, if the district court found a reasonable jury question as to whether there was invidious discrimination here, and you didn't defend against that claim, again, I am concerned that there might be a mismatch between that finding, which is, I guess, sort of law of the case now, and not only did you not appeal it, you didn't even defend against it in the district court, and then a grant of qualified immunity. Sorry, I'm seeing the red on my time here and it concerns me, but if the court will allow me to go over here to answer that question, we have to remember that qualified immunity in and of itself is procedural in its nature when you think about it. We're talking about the issues on the merits and these violations of law, but the question of qualified immunity is, do we even make it to that point? Do we make it to the point where we are deciding liability or are the defendants immune? Are the defendants immune from liability and therefore we don't reach this point on the merits? And so we're talking about this issue as if we can't decide qualified immunity because there are matters on the merits that can be decided, but we have to remember to get to the merits, we have to overcome qualified immunity first. Well, right, but to do the qualified immunity analysis, we have to say, are there disputed facts that would allow a reasonable jury to find that something happened here that violated clearly established law? And the district court appears to have held that a reasonable jury could find not just differential treatment, but also invidious discrimination. And if that is true, then I think it is impossible to grant qualified immunity as a matter of law, because if a jury could come back with a verdict that these people were just like, whatever, we're not interested in accommodating the Muslim, that violates clearly established law. So do you see what I'm saying? Like, I understand that they are analytically distinct, but we do have to figure out whether a reasonable jury could make a factual finding that would then preclude the granting of qualified immunity. Yes, ma'am, I understand the court's point. Sorry, I've taken too much of your time. Do you have anything to say about it? I have a question. You're going to respond to Judge Harris first? No, that's okay. I'm good. Let me ask you this, Mr. Kreiner. Yes, sir. Are these claims, have you got better argument on some claims than on others, or are the claims a packing steal? Do they rise or fall together? And I include in there the state law claims, and I'm going to ask the law student when he gets back up there the same question. Well, the district court properly implied that the state law claims, we don't have any additional. You say that you've got a better argument. I'm talking about the immunity, yeah, because it all falls on qualified immunity, because remember, qualified immunity is triggered by civil liability, civil damages of government officials. So once you're suing. So you're saying it's a package deal? Yes, sir. Yes, sir. Once you're suing for civil damages. These five claims rise or fall together? Yes, sir. All right. Thank you very much. Judge Packer, Judge Harris, do you all have anything else? I'm good. I don't have any questions. But now we've got to. Thank you. Thank you very much, sir. I appreciate the extra time, and I apologize for dragging on there, Judge Harris. Thank you. No, that's fine. Thank you. I appreciate the help. I have a question. But we have a different law student here for the rebuttal. It's Mr. Shriver. Mr. Shriver. Thank you, Your Honor. Thank you, Your Honor. May it please the court. We agree that the issue here on appeal is qualified immunity, and we agree with some of the nutritionally adequate meal is required. And that is a debate here. We agree with the court's conversation that as long as intentional discrimination is debated, as the district court found, that disqualifies. I mean, your co-counsel there said he was going to look or that he needed to look in the record to answer my question as to whether the officers at the jail at the time knew that anything other than Mr. Coleman saying he wasn't getting enough to eat. Did they know at the time that he was complaining of stomach pains and all of that, or did that come after the fact in this litigation in answers to interrogatories? It came, we actually found that the Joint Appendix 252 is the first. I found it too. Came after the fact, right? Well, it came from a visit to the infirmary. It did not come within the litigation. It came during the back and forth with the defendant. What year? This was in 2019, Your Honor. Okay. And the violation, the alleged violation was in what year? Alleged violation took place over, what was it? Wait, 252. Okay, go ahead. 232? The initial complaint was filed in 2018. It all took place in 2018. The complaints and the requests and all of that for the compliant meal because he wasn't getting enough to eat were in 2018. So, even this visit to the infirmary that you cite to me at JA 252 was in 2019. Correct, Your Honor. So, what was it that the officers at the jail knew at the time was his issue with the meal he served? So, even in Sergeant Jones' deposition, she notes that she was told that he brought to her the complaint that he was not getting sufficient food. That was back in 2017. The place I'm citing to is just the first place that he came from a medical source. So, this was where it came from an infirmary where he complained of gastrointestinal distress. But early- Right, but he did not complain to Officer Jones or any other officer at the time, at least not in the record of gastrointestinal distress. That came the following year and also in litigation. Correct? Correct, but to Sergeant Jones, he told her that he was not getting sufficient food and that he needed more food. Correct. So, she did know that there was a complaint of nutritional adequacy. He did not use the language of gastrointestinal distress at that time, but he did in 2019. Correct. All he said was he wasn't getting enough to eat. Correct? That's what's in the record, Your Honor, yes. Okay, thanks. And so, to Judge Harris's question about why we look beyond the nutritional adequacy and the intentional discrimination, where we believe you are right, there's a mismatch between the district court's finding and the grant of qualified immunity, is because we care about all these arguments and we think that Mr. Coleman has arguments that are successful beyond simply mismatches, including the course of choice. And the course of choice is important to us because you actually have established precedent in this court, starting with Jehovah v. Clark, just, I think, five years ago, where the court found that being put to a course of choice between one's religious practice and between a government discretionary benefit is itself a substantial burden. And so, that's why we believe we have actually multiple avenues by which Mr. Coleman should win this case, multiple avenues by which there are substantial burden and multiple reasons why qualified immunity does not properly apply here. Now, which claim is the best claim for you? Which claim is the best claim for us? Intentional discrimination. You got a stronger claim, which is the strongest claim for your client? The intentional discrimination claim is certainly the strongest claim, Your Honor. I think just going back to... Is that the equal protection claim? Yes, Your Honor. I think going back to Judge Harris's question about what we mean by intentional discrimination, in this case, so Crawford L. requires specific facts to infer discrimination. And here we have a very specific set of facts. You have a jail that provides meat to Jewish inmates whose religion does not require it, while not providing it to Muslim inmates whose religion does require it. And meanwhile, the Muslim inmates are receiving a meal that's not especially halal, not for Muslim inmates, but it's a common fair diet that's provided to other vegetarian religions, such as Buddhists and Sikhs. So, you have Jews receiving a meat-based diet that their religion doesn't require, and Muslims receiving a diet that is inferior in their eyes because of the lack of meat in that diet. And I think it's just worth noting... But these defendants come in at the trial and testify that they didn't know any of this stuff. They didn't know what you're arguing about here now. So, they would beat you before the jury by proving good faith, wouldn't they? Excuse me, Your Honor. Excuse me, Your Honor. I mean, our point here is that, again, he was a Muslim inmate, as I said, who was requesting a meat-based diet, where you have Jewish inmates that were not receiving a meat... Excuse me, were receiving a meat-based diet and didn't need it. And so, just that differential treatment with no explanation, no penological justification. Again, many of the cases cited by the defense had extensive penological justifications. In one case where a similar concern was raised, the problem was that there was only four Jewish inmates, and there were hundreds of Muslim inmates, and they could point to financial costs and substantial burdens that would come to the prison. Here, there were no penological concerns, and for those reasons... Well, there weren't hundreds of Muslim inmates who were in here, right? We're talking about county jail. Correct, and Your Honor, I guess... The differential treatment, the inferior treatment of Muslims, went unexplained, as opposed to other cases. And for all these reasons, we believe the intentional discrimination claim... They could explain it before the jury and come clear in a jury verdict. But the question here, all we're going to have to decide is whether they get a trial or not. Correct. Correct, Your Honor. Whether they get a trial or not. Correct. And I know I've gone over time here, so I'll just close by saying, and we believe that because this claim and a number of other claims are strong, and that the qualified immunity, for the reasons stated largely by the judges, Your Honors, we believe... We ask that you reverse this grant of summary judgment and find it in Mr. Coleman's favor. We appreciate very much the work of you, Mr. Shriver, and your colleagues there at the court. If we were in Richmond, we would, at this point, leave the bench and come down to the well of the court and shake your hands and congratulate you on your performance in this case. But we're not in Richmond and we can't do that. So we can just thank you and commend you for your efforts. That being said, Madam Clerk, we'll take this case under advisement.
judges: Robert B. King, Stephanie D. Thacker, Pamela A. Harris